# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD KOVACS,

Plaintiff-Appellee,

UNPUBLISHED
June 20, 2017

v

No. 331448
Oakland Circuit Court
LC No. 2014-142141-NM

JEFFREY ROBBINS and HERTZ SCHRAM, PC,

Defendants-Appellants.

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

In this legal malpractice action, defendants appeal[1] the trial court's order that denied their motions for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). Because plaintiff's claim is barred by the statute of limitations, we reverse and remand for entry of summary disposition in favor of defendants.

"This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). "Summary disposition may be granted under MCR 2.116(C)(7) when a statute of limitations bars a claim." *In re Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015). "In reviewing a ruling pursuant to subrule (C)(7), '[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012), quoting *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). Summary disposition pursuant to MCR 2.116(C)(7) is only proper when "the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts." *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003).

---

[1] This Court granted defendants' application for leave to appeal in *Kovacs v Robbins*, unpublished order of the Court of Appeals, entered April 7, 2016 (Docket No. 331448).

-1-

MCL 600.5805(6) states that the statute of limitation for "an action charging malpractice" is two years after the claim first accrued. MCL 600.5838 defines when a professional malpractice suit accrues:

> (1) . . . [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

> (2) . . . [A]n action involving a claim based on malpractice may be commenced at any time . . . within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The plaintiff has the burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim. A malpractice action that is not commenced within the time prescribed by this subsection is barred.

"The first subsection provides that accrual occurs on the last day of professional service, regardless of when the plaintiff discovers or otherwise has knowledge of the claim." *Gebhardt v O'Rourke*, 444 Mich 535, 541; 510 NW2d 900 (1994). Additionally, "[t]he second subsection allows additional time to file by providing that a plaintiff can file within six months of when he discovered, or should have discovered his claim." *Id*. "A lawyer discontinues serving a client when relieved of the obligation by the client or the court or upon completion of a specific legal service that the lawyer was retained to perform." *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994) (citations omitted).

Thus, the initial inquiry is to determine when plaintiff's claim accrued. Pursuant to *Gebhardt* and *Maddox*, plaintiff's claim accrued when defendants completed the specific legal service that they were retained to perform. According to MCL 600.5838(1), the completion of legal services must relate "to the matters out of which the claim for malpractice arose." Stated differently, the analysis requires us to consider what legal service performed by defendants allegedly caused the plaintiff's claim to arise and, secondarily, when defendants completed that legal service. MCL 600.5838(1); see also *Maddox*, 205 Mich App at 450. With respect to those questions, despite arguments to the contrary by plaintiff, the record is undisputed. Specifically, the record reveals that plaintiff was in the process of negotiating an employment contract with North American Bancard (NAB) over the course of eight years. When plaintiff believed that he and NAB were edging toward a solid agreement, he hired defendants to negotiate on his behalf. Regardless of plaintiff's allegations regarding defendants' alleged negligence, the employment agreement was entirely negotiated and signed by April 2010. Indeed, during plaintiff's deposition, the following colloquy occurred:

*Q*. Okay. So whether it was March 25th or 26th or sometime around the March 20s, you had a fully executed employment agreement, correct?

*A*. Yes, ma'am.

*Q.* At least by April 1, 2010.

*A.* Yes.

*Q.* And so the job that you hired [defendants] to do was complete by that point, correct?

*A.* I'd say that's a fair statement.

Defendants agreed that once the employment agreement was executed, they considered the legal services for which they were hired to be complete.

The record also reveals that plaintiff's entire claim of legal malpractice is based on defendants' alleged negligence during the negotiation of the employment contract. In particular, plaintiff asserts that defendants failed to properly negotiate terms that were requested by plaintiff, failed to fully explain changes that were made to plaintiff's detriment, and failed to instruct plaintiff regarding the value of his prior agreement with NAB pursuant to a 2001 letter versus the new employment agreement and whether plaintiff should choose to rely on the 2001 letter instead of signing the new agreement. Plaintiff has not offered any argument that defendants' alleged malpractice has anything to do with the services that defendants provided to plaintiff *after* the execution of the agreement. Simply put, the "matters out of which the claim for malpractice arose" were defendants' allegedly negligent negotiation of plaintiff's employment contract. MCL 600.5838(1). Further, as plaintiff testified, the negotiation of the employment contract was completed, at the latest, by April 1, 2010. Hence, on April 1, 2010, defendants "complet[ed] [the] specific legal service that [they were] retained to perform." *Maddox*, 205 Mich App at 450. Therefore, the two-year limitations period provided in MCL 600.5805(6) began to run on April 1, 2010, and ended on April 1, 2012. As a result, plaintiff's complaint, which was filed on July 31, 2014, was not timely, and his claim is barred.[2]

Plaintiff also alleges that his claim nonetheless fell under the six-month discovery exception to the general statute of limitations pursuant to MCL 600.5838(2). Recall that MCL 600.5838(2) provides that "an action involving a claim based on malpractice may be commenced at any time . . . within 6 months after the plaintiff discovers or should have discovered the existence of the claim." The statute places the burden on plaintiff to prove that he did not know nor should not have known of his claim more than six months before the complaint was filed. MCL 600.5838(2). Plaintiff cannot meet his burden. Under the discovery rule, the standard is "not that the plaintiff knows of a 'likely' cause of action." *Gebhardt*, 444 Mich at 544. Rather,

---

[2] In an attempt to subvert his deposition testimony that defendants' work was completed by April 1, 2010, plaintiff submitted an affidavit to the trial court wherein he averred that he had a continuing legal relationship with defendants until 2014. However, that argument is without merit because plaintiff is not permitted to "contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001) (citations and quotation marks omitted).

the discovery period begins to run when the plaintiff "discover[s] that he has a 'possible' cause of action." *Id*. Further, "[t]he discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Moll v Abbott Laboratories*, 444 Mich 1, 18; 506 NW2d 816 (1993). "Once an injury and its possible cause is known, the plaintiff is aware of a possible cause of action." *Gebhardt*, 444 Mich at 545.

The record reveals that plaintiff signed his employment agreement with NAB by April 1, 2010. Thereafter, plaintiff worked for NAB pursuant to that contract. Plaintiff testified that in 2012, NAB's CEO engaged in the recapitalization of NAB, during which the CEO withdrew $175 million from the company. Plaintiff thought that his employment agreement should have included that recapitalization by the CEO as a "triggering event," which would have caused plaintiff's incentive bonus to be paid. Indeed, plaintiff stated that he called defendants to ask if the recapitalization allowed for plaintiff to be paid his incentive bonus because his understanding of the negotiations and the employment agreement was that when the CEO received a cash out from the business, so would plaintiff. At that time, defendants informed plaintiff that the recapitalization was not a triggering event. Plaintiff testified that he blamed defendants for not including such an event as a triggering event and believed that defendants had erred when they negotiated the employment agreement. Then, in late 2013, plaintiff became aware that NAB created a new regulatory fee charged to merchants. Plaintiff believed that his employment agreement accounted for those new fees to be included in the calculation of his commission. However, upon calling NAB's finance department, plaintiff was informed that his employment agreement did not cover these newly created regulatory fees. Once again, plaintiff testified to his belief that defendants had erred in negotiations because he thought he was due a percentage of those fees.

In both the 2012 and 2013 events, plaintiff realized that the lack of inclusion of certain terms in his employment agreement had caused him harm. Specifically, he was not paid his incentive bonus in 2012 when he believed he should have been, and he was not paid his share of the newly created fees in 2013 when he thought those were accounted for in his employment agreement. In both instances, he blamed defendants' negotiations for the harm. As such, by 2012, and certainly by 2013, plaintiff was aware of "an injury and its possible cause." *Id*. Despite those two instances, plaintiff did not file his complaint for legal malpractice until July 31, 2014, which is more than six months after each issue arose.

Plaintiff argues that the discovery of those injuries should not be determined to be the discovery date because plaintiff did not know about several other issues arising out of the employment agreement until 2014. However, the Michigan Supreme Court has held that "harm is established not by the finality of the damages, but by the occurrence of identifiable and appreciable loss." *Id.* Plaintiff's argument is that he did not discover the full extent of his damages due to defendants' allegedly negligent representation until 2014. However, that argument is misplaced because the analysis of the discovery period relates to plaintiff's discovery of an injury and its cause and does not extend to "a later realized consequence of the injury." *Moll*, 444 Mich at 18. As such, by 2013, plaintiff was plainly aware of his injury (a poorly drafted employment agreement) and what he believed to be the cause thereof (defendants' malpractice). Therefore, the six-month discovery exception period under MCL 600.5838(2) began to run in 2013, which means that this period necessarily lapsed before plaintiff filed his complaint on July 31, 2014.

As a result, we hold that plaintiff's claim was time-barred by MCL 500.5805(6) and was not saved by the discovery exception in MCL 600.5838(2). Therefore, the trial court erred when it denied defendants' motion for summary disposition, and it should have granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(7).[3]

Reversed and remanded for entry of summary disposition in favor of defendants. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell

---

[3] In light of our holding that summary disposition is appropriate under MCR 2.116(C)(7), we need not consider defendants' other argument that summary disposition should have been granted under MCR 2.116(C)(10) due to plaintiff's failure to create a genuine issue of material fact regarding proximate causation.