*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SPIRO VOUTSARAS,

      Plaintiff-Appellant,

v

ARLYN J. BOSSENBROOK, and ARLYN J. BOSSENBROOK, P.C.,

      Defendants-Appellees.

UNPUBLISHED
February 25, 2020

No. 345493
Ingham Circuit Court
LC No. 16-000766-NM

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendants, Arlyn J. Bossenbrook and Arlyn J. Bossenbrook, P.C. (hereinafter collectively referred to as "Bossenbrook"), on plaintiff's claims of legal malpractice, breach of fiduciary duty, and silent fraud. We are asked to decide whether the trial court committed error requiring reversal when it found that (1) plaintiff's claims of silent fraud and breach of fiduciary duty were not distinct from plaintiff's claim of legal malpractice, and (2) plaintiff's claim of legal malpractice was time barred. We affirm.

## I. FACTS

In September 1995, plaintiff married Diana Voutsaras in 1995 and two years later they had twins Nikolaos and Paulena. Diana had a daughter, Kelly Hart, from a previous marriage. In 1998, Diana created a trust for her three children. In 1999, Diana purchased a $1.5 million life insurance policy from Phoenix Life Insurance Company naming plaintiff as the beneficiary. In 2005, Diana reduced that policy to $250,000 and purchased a second life insurance policy from Pacific Life Insurance Company for $3 million naming plaintiff as the beneficiary.

In the early 2000's, plaintiff (a financial planner) and Bossenbrook (an estate-planning attorney) began working together on matters for mutual clients. In 2012, plaintiff and Diana met with Bossenbrook to discuss estate planning for Diana who had been diagnosed with terminal cancer. Bossenbrook drafted an irrevocable life insurance trust ("ILIT") naming plaintiff as the trustee and Nikolaos and Paulena as beneficiaries. Bossenbrook emailed the draft to plaintiff and

-1-

requested a meeting with plaintiff to discuss it. Plaintiff did not respond to the email, and Diana did not execute the ILIT.

In June 2013, Diana contacted Bossenbrook to discuss the trust. Diana met with Bossenbrook several times over the next few months, and occasionally brought her daughter Hart with her. As a result of those meetings, Bossenbrook drafted another ILIT for Diana which named Hart as a trustee and Hart, Nikolaos, and Paulena as beneficiaries. In October 2013, Diana executed the trust and changed the beneficiary of her life insurance policies from plaintiff to the 2013 ILIT. Bossenbrook did not perform any other services for Diana, and she picked up her file from Bossenbrook's office a few months later.

Diana died in January 2015. Two months later, Hart submitted life insurance claims and the policies paid out a total of $3,250,000 to the 2013 ILIT.

In October 2016, plaintiff filed a complaint against Bossenbrook alleging legal malpractice and breach of fiduciary duty. Plaintiff later amended his complaint to include a count of silent fraud. Plaintiff alleges that he and Diana had a plan to pay off their joint creditors: the proceeds from Diana's life insurance policies were supposed to be paid out to plaintiff, who in turn would pay off the creditors. Plaintiff further alleges that he and Diana had been Bossenbrook's clients since 2002 when plaintiff first began discussing their estate planning with Bossenbrook, and that Bossenbrook met with Diana and Hart in secret and "concocted a plan to divert the Life Insurance Policies proceeds" to the 2013 ILIT, and then never sent plaintiff the bill for those legal services in an effort to conceal those actions from plaintiff.

Following discovery,[1] Bossenbrook moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10) and argued that plaintiff's claims for breach of fiduciary duty and silent fraud were subsumed by his claim for legal malpractice which was barred by the applicable two-year statute of limitations because it accrued in October 2013 at the latest, and the limitations period ran out in October 2015, which was one year before plaintiff filed suit. Moreover,

---

[1] During the discovery period, plaintiff sought to compel discovery of notes that Bossenbrook authored during the period of time when Bossenbrook represented Diana. The trial court held a hearing on the matter, reviewed the notes *in camera*, and denied plaintiff's motion because the notes were not relevant and otherwise protected by the work-product doctrine. In the body of plaintiff's brief on appeal, he raises the issue of whether the trial court committed error requiring reversal when it denied his motion. However, plaintiff did not include this issue in his statement of questions involved. Failure to include an issue in the statement of questions presented results in the issue being abandoned on appeal, and we need not address it. See MCR 7.212(C)(5); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2004).

In any event, the claim is meritless as plaintiff fails to persuasively argue any exceptions to the attorney-client privilege or work-product doctrine that may be applicable here relative to Bossenbrook's representation of Diana. MCR 2.302(B)(1) also is inapplicable as plaintiff fails to show a substantial need for the notes. This is especially so in light of plaintiff's failure to meet the applicable statute of limitations.

Bossenbrook argued, the six-month discovery rule did not salvage plaintiff's claim because he had reason to know about the alleged malpractice as early as September 2013 or as late as February 2015. Additionally, Bossenbrook argued, plaintiff could not prove causation because Diana had made the decision to change the beneficiary and execute the 2013 ILIT, and plaintiff could not prove damages because he had only an expectancy interest at most. Bossenbrook argued, in other words, that his actions of drafting the 2013 ILIT and providing Diana with the change of beneficiary forms for the life insurance policies had no legal effect.

Plaintiff argued that his claims of breach of fiduciary duty and silent fraud were based on allegations that Bossenbrook took actions directly adverse to his interests, and therefore, they were not duplicative of his claim for legal malpractice. Moreover, plaintiff argued, his claim for legal malpractice was timely because his attorney-client relationship with Bossenbrook did not terminate until Diana died in January 2015, and until that time Bossenbrook had not completed the estate-planning services that plaintiff had requested, nor had Bossenbrook informed plaintiff that representation had ended. Plaintiff further argued that his claim of breach of fiduciary duty was timely because it was brought within three years from when Diana executed the 2013 ILIT and plaintiff did not have actual or constructive knowledge of the alleged breach before that time. Plaintiff contended that his claim of silent fraud was timely because it was raised within six years after Bossenbrook deliberately failed to advise him of the changes to Diana's estate plan with regard to the 2013 ILIT. He further argued that Bossenbrook's actions proximately caused his damages, and but-for those actions he would have received all of the life-insurance proceeds upon Diana's death.

Plaintiff also filed a motion for partial summary disposition with regard to his claim of breach of fiduciary duty, and argued that Bossenbrook's actions caused him to lose over $3 million in death benefits from Diana's life insurance policies. Bossenbrook reiterated his arguments that the breach of fiduciary duty claim was subsumed by the claim for legal malpractice, and that the legal malpractice claim was time-barred. Bossenbrook further argued that plaintiff cannot prove the elements of breach, proximate cause, or damages. Additionally, Bossenbrook argued, plaintiff had not addressed, or offered any evidence to prove that Bossenbrook had acted with the requisite culpable state of mind.

The trial court held a hearing on the cross-motions and concluded that plaintiff's claim of legal malpractice subsumed his claims of breach of fiduciary duty and silent fraud. The trial court further concluded that plaintiff's legal malpractice claim was time barred because any attorney-client relationship that existed between the parties ended in October 2013 when Diana executed the ILIT and change of beneficiary forms for the life insurance policies. The trial court suggested that the legal malpractice claim also failed on its merits because it was Diana's administrative act of changing the beneficiary of the life insurance policies, not Bossenbrook's legal act of drafting the ILIT, that purportedly caused plaintiff's alleged damages.

Following the hearing, the trial court entered an order granting Bossenbrook's motion for summary disposition and denying plaintiff's motion for partial summary disposition. The order stated that, for reasons stated on the record, summary disposition was granted in defendant's favor pursuant to MCR 2.116(C)(7) with respect to the count of legal malpractice, and pursuant to (C)(8) with respect to the remaining counts of breach of fiduciary duty and silent fraud. This appeal

-3-

followed.

## II. STANDARD OF REVIEW

We review de novo both the applicability of a statute of limitations and the trial court's ruling on a motion for summary disposition. *Dep't of Envtl Quality v Gomez*, 318 Mich App 1, 21; 896 NW2d 39 (2016). Summary disposition under MCR 2.116(C)(7) (claim is barred by statute of limitations) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. *Id.* The burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. *Id.*

When reviewing a motion under MCR 2.116(C)(7), we must accept all well-pleaded factual allegations as true and construe them in the plaintiff's favor, unless other evidence contradicts them. *Id.* "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id.* "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id.* "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id.*

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the pleadings alone. *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016). When deciding a motion under (C)(8), we accept all well-pleaded factual allegations as true, construing them in the light most favorable to the nonmoving party, and grant the motion only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010).

## III. ANALYSIS

Plaintiff first argues that the trial court committed error requiring reversal when it found that plaintiff's breach of fiduciary duty and silent fraud claims were subsumed by his legal malpractice claim. We disagree.

Generally, when characterizing potentially duplicative claims in a legal malpractice context, we must read the complaint as a whole and determine the type of interest allegedly harmed and how this is claimed to have occurred. *Aldred v O'Hara–Bruce*, 184 Mich App 488, 490; 458 NW2d 671 (1990). When a plaintiff alleges negligent legal representation, the claim is one of legal malpractice, *id.*, but when the interest involved in a claim for damages differs from the interest involved in a legal malpractice case, they may stand as separate claims, see, e.g., *Brownell v Garber*, 199 Mich App 519, 532; 503 NW2d 81 (1993).

The elements of a claim of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligent legal representation of the plaintiff; (3) that the negligence proximately caused an injury; and (4) the fact and extent of the injury alleged. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). Relief for a breach of a fiduciary duty may be sought when a "position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vincencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). A breach of fiduciary duty claim differs from a legal malpractice claim because "[t]he conduct required to constitute a breach

of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice." *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005). However, the breach of fiduciary duty claim must be viewed within the context of the entire complaint in order to ascertain the gravamen of the action. *Aldred*, 184 Mich App at 490–491.

Here, plaintiff alleges that from 2002 until Diana's death, he sought advice from Bossenbrook regarding his and Diana's estate planning objectives and that Bossenbrook breached his fiduciary duty to plaintiff by drafting the 2013 ILIT and recommending to Diana that she sign it, and by failing to notify plaintiff that Diana had executed the 2013 ILIT. Plaintiff further alleges that Bossenbrook "fraudulently concealed" these breaches from plaintiff by failing to notify plaintiff of the services he had provided to Diana and of the existence of the 2013 ILIT, and by failing to bill plaintiff for the services Diana had received.

Plaintiff's allegations regarding his claim of breach of fiduciary duty mirror his allegations with respect to his claim for legal malpractice. His allegation that Bossenbrook owed him a fiduciary duty is based on the parties' purported attorney-client relationship, and the alleged breach of that duty arises from the same acts that plaintiff alleges gave rise to his claim for malpractice. A given set of facts may give rise to more than one cause of action, such that it would be improper to summarily dismiss one claim merely because it relies upon the same set of facts as another claim. *Frieburger v Dep't of Mental Health*, 161 Mich App 316, 319-20; 409 NW2d 821 (1987). However, plaintiff fails to allege that Bossenbrook acted with a conduct committed with "a more culpable state of mind than the negligence required for malpractice." Plaintiff alleges that Bossenbrook "fraudulently concealed" the alleged breaches, but that he did so by failing to notify plaintiff of drafting and execution of Diana's 2013 ILIT. This is the same conduct that plaintiff alleges gave rise to his legal malpractice claim. In other words, plaintiff did not allege that Bossenbrook breached any duty arising outside of the purported attorney-client relationship. Considering the gravamen of plaintiff's suit based on a reading of the complaint as a whole, *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691–692; 822 NW2d 254 (2012), the trial court correctly held that plaintiff's claim of breach of fiduciary duty was subsumed by his claim for legal malpractice.

Similarly, the trial court correctly concluded that plaintiff's claim of silent fraud was subsumed by his claim for legal malpractice. Fraud is distinct from malpractice. *Brownell*, 199 Mich App at 532. The elements of fraud are:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id.* at 533.]

"Silent fraud" exists when there has been a suppression of material facts and a duty to disclose those facts. *M & D, Inc v WB McConkey*, 231 Mich App 22, 35–36; 585 NW2d 33 (1998).

Here, plaintiff alleges that Bossenbrook owed him a duty to disclose the changes in Diana's estate planning due to the fiduciary relationship between the parties. As discussed above, plaintiff's claim of a fiduciary relationship arises out of the parties' purported attorney client relationship. "If a client attempts to characterize a malpractice claim as a fraud or other type of claim, a court will look through the labels placed on the claim and will make its determination on the basis of the substance and not the form." *Brownell*, 199 Mich App at 532–533. For the same reasons discussed above, plaintiff's claim of silent fraud is subsumed by his claim for legal malpractice. Accordingly, the trial court properly granted summary disposition on these claims pursuant to MCR 2.116(C)(8).

Plaintiff next argues that the trial court commit error requiring reversal when it found that plaintiff's claim of legal malpractice was time barred and otherwise failed on the merits. We disagree.

A legal malpractice claim must be brought within two years of the date the claim accrues, or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. MCL 600.5805(6); MCL 600.5838(2). An attorney's representation of a client generally continues until the attorney is relieved of that obligation by the client or the court, and retention of an alternate attorney effectively terminates the attorney-client relationship. *Mitchell v Dougherty*, 249 Mich App 668, 683; 644 NW2d 391 (2002). A legal malpractice claim accrues on the attorney's "last day of professional service" in the matter out of which the claim for malpractice arose. *Gebhardt v O'Rourke*, 444 Mich 535, 543; 510 NW2d 900 (1994). Ministerial or minor follow-up acts after discontinuation of representation, e.g., making a file available to a former client, will not work to extend the period of representation and create a new date of accrual. *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999) (concluding that "the proper inquiry is whether the new activity occurs pursuant to a current, as opposed to a former, attorney-client relationship."). To be ministerial acts, any contacts with the client should be brief and must not be billed. *Maddox v Burlingame*, 205 Mich App 446, 451; 517 NW2d 816 (1994) (stating that billing for new services constitutes an acknowledgement of continued representation in a matter).

Plaintiff argues that his claim of legal malpractice was timely because there was no evidence that the attorney-client relationship between Bossenbrook and plaintiff terminated before Diana's death in January 2015. However, plaintiff asserts in his complaint that that Bossenbrook committed malpractice when he drafted the 2013 ILIT for Diana to sign. A legal malpractice claim accrues on the attorney's "last day of professional service" in the matter out of which the claim for malpractice arose. *Gebhardt*, 444 Mich at 543. Bossenbrook testified during his deposition that he began representing Diana in June 2013 when she first contacted him to help her set up a trust, and his representation ended on October 11, 2013 when she executed the 2013 ILIT, even though Diana did not pick up her file from Bossenbrook's office until June 2014. Thus, according to the complaint, the operative date is October 11, 2013, and there is no evidence demonstrating that Bossenbrook's representation continued past that date. Notably, the trial court concluded that the act causing the alleged injury was Diana's execution of the change of beneficiary forms, not the creation of the 2013 ILIT itself. This distinction is immaterial because the 2013 ILIT and the change of beneficiary forms were executed on the same day, October 11, 2013, and plaintiff did not file his complaint within two years of that day as required by the statute of limitations. MCL

600.5838(2).

Plaintiff's claim is not salvaged by the six-month discovery rule. MCL 600.5838(2). As the trial court noted, plaintiff knew of Diana's plan to create the 2013 ILIT and fund it by changing the beneficiary named on the life insurance policies *before* she did it and *after* she did it. Indeed, plaintiff testified that on September 10, 2013, Diana told him over dinner that she intended to create the 2013 ILIT. However, it is not clear from the record whether plaintiff knew about Bossenbrook's role at that point. Viewing this evidence in the light most favorable to plaintiff, *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), we cannot conclude that plaintiff knew or should have known about the alleged malpractice based solely on that conversation with Diana.

Nonetheless, we conclude that plaintiff's claim is not timely. In a letter addressed to plaintiff dated October 29, 2013, Pacific Life Insurance Company sent notice that there had been a change of beneficiary on Diana's policy. Although plaintiff could not recall whether he had received the letters from Pacific Life Insurance Company, plaintiff acknowledged that, because he was listed as a provider of the life insurance policies, he likely would have received such a notice. Under the discovery rule, a cause of action accrues when the claimant knows or should have known of the injury. *Moll v Abbott Labs*, 444 Mich 1, 17–18; 506 NW2d 816 (1993), abrogated not in relevant part by *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 393; 738 NW2d 664 (2007) (holding that the Legislature abrogated the common law discovery rule by codifying the rules for specific causes of action). "[A] plaintiff's cause of action accrues when, on the basis of objective facts, the plaintiff should have known of an injury, even if a subjective belief regarding the injury occurs at a later date." *Id*. This holds true for the additional two letters addressed to plaintiff from Pacific Life Insurance Company dated February 3, 2015, identifying the 2013 ILIT as the policy's beneficiary and outlining how to make a claim, and March 24, 2015, approving payment of proceeds to the 2013 ILIT.

Additionally, plaintiff testified that he first learned about the changes to Diana's estate plan in December 2014 when he spoke with Diana's brother and Hart about the 2013 ILIT and demand that Hart have the trust "redone." Plaintiff also stated that he knew that Bossenbrook had drafted the 2013 ILIT and spoke with Diana about it. Viewing this evidence in the light most favorable to plaintiff, he certainly should have known of the changes to Diana's estate plan and Bossenbrook's role in effecting those changes no later than March 24, 2015. Plaintiff did not file the instant complaint until October 11, 2016—well past the statutory six-month period had run. Thus, plaintiff's claim of legal malpractice was time barred pursuant to MCL 600.5838(2), and the trial court properly dismissed the claim pursuant to MCR 2.116(C)(7).

## IV. CONCLUSION

The trial court properly found that plaintiff's claims of silent fraud and breach of fiduciary duty were not distinct from plaintiff's claim of legal malpractice, and that plaintiff's claim of legal malpractice was time barred. Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan